Hiles *v.* Hecla Coal & Coke Co., Appellant.

Argued September 25, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*R. M. Steffler*, with him *D. S. Robinson*, for appellant. —An examination of the testimony and the findings of fact of the referee shows clearly that the award was based upon a presumption not warranted by the evidence: Hunter v. Am. S. & W. Co., 293 Pa. 103; Stahl v. Coal Co., 268 Pa. 452; Palko v. Taylor-McCoy C. & C. Co., 289 Pa. 401; Shoffler v. Coal Co., 290 Pa. 480; Gausman v. Pearson, 284 Pa. 348; Mauchline v. Ins. Fund, 279 Pa. 524.

If decedent was in the course of his employment at the time of the alleged accident he was engaged in a maritime occupation, over which this court has no jurisdiction: Cope v. Dry Dock Co., 119 U. S. 625.

*George Patterson,* with him *Lee Smith,* for appellee.

OPINION BY MR. JUSTICE KEPHART, January 7, 1929 :

Appellant's plant bordered the Monongahela River. It consisted of coke ovens, tipple, power house, repair shop, other outbuildings and a river tipple with piers from which coal was shipped in barges.

Claimant's husband was a night watchman on the premises. His duties were to light the barges, pump water from them and keep their boilers fired; on land he was to keep fires in the office, blacksmith shop and other buildings, to guard the coke, coke ovens, buildings and defendant's plant generally. The company supplied him with a revolver, holster, belt and cartridges, and the employment was continuous.

On the evening of December 17, 1925, two hours after the usual work was begun, he was instructed by the yard boss to examine the coke on the cars every hour. After receiving these instructions he went home for something to eat. He started back to the pier about eight-forty, intending to shut off an injector which "he had left on when the yard boss called him."

In passing to and from land to the work on the water, he could use a plank or a ladder, or he could jump. The employee was last seen going in the direction of the pier. Three months later his badly decomposed body, fully dressed as he had left home and armed, was found in the Monongahela River about twelve hundred feet from where the pump boat and barges were located. His watch had stopped at 8:46. On behalf of the widow and ten children, a claim for compensation was filed with the board, and allowed. An appeal to the common pleas resulted in an affirmance of the order. The appeal to this court raises two questions: first, was the injury incurred on the premises in the course of employment; second, was it a maritime tort on a navigable river over which the court has no jurisdiction?

Appellee places her right to recover compensation on our decision in Flucker v. Carnegie Steel Co., 263 Pa. 113. The case justifies her claim. We have so frequently stated the law with respect to employees leaving the premises and returning to work that it is quite unnecessary to do so again. Reference is made to the cases of Hunter v. American Steel and Wire Co., 293 Pa. 103, and Palko v. Taylor-McCoy Coal & Coke Co., 289 Pa. 401, 405. The facts in the present case are not similar to nor controlled by the cases mentioned, though they have many points in common.

The employee's duties were various, part of which he performed on land and part on water. As a watchman of the "plant," he would ordinarily be required to patrol the operating plant, including the barges, coke ovens, repair shop, pump house, stables, garages, etc.; in a word, all property actively used for company purposes. As we view the map, the sphere of his labor was broad enough to bring him close to his own home, and as he was last seen going toward the pier, this would be well within the zone of his duties. On leaving his home he could be seen for quite a distance by his companion going in the direction of his work, as he stated, "to turn off the injector." The distance from the place where he was last seen to where he was actually engaged was about 125 feet. Appellant's argument on this phase of the case disregards the area where the duties of watchman were performed; in this light, where last seen he was well within the sphere of duty. Another circumstance of weight was that he left his home about eight-forty; and when he was found his watch was discovered to have stopped at eight-forty-six. It would take about six minutes or so to go from his house to the river pier; this time shows he must have been directly within the sphere of his work; at any rate, the time was too short for him to have gone twelve hundred feet from where he was last seen to the place along the river where his body was found. The night was cold, the wind blowing, the

rain that had fallen earlier in the day was frozen and the facilities provided for getting on and off the pump boat were exceedingly dangerous. He had fallen into the river a number of times before, when attempting to get on or off these boats.

All of this evidence merely affirms what we have often said,—that where there is evidence to support a material finding, it will be conclusive on us. It was not intended by the legislature that this court should be an appellate administrative tribunal to weigh the evidence submitted to the referee or the board. Our revisory powers are limited to such consideration of the record as will enable us to ascertain whether there is evidence to support the findings of the board and if, upon such findings, the law has been properly applied. Though we may be of opinion, from the apparent weight of the evidence, that a finding should be made adverse to that of the board, we are not at liberty to enter or direct such different finding, where the one adopted by the board is supported by proof: Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, 165. When an employee is last seen at his regular place of service, and his dead body is found under circumstances fairly indicating an accidental death from a cause originating within the place of employment, and occurring during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was killed in the course of his employment.

Was the employee engaged in maritime employment, and did the compensation board have jurisdiction if the accident occurred on a ship in navigable water? If we assume the injury did occur while he was thus directly engaged, we are not convinced appellee is not entitled to receive compensation under the plan previously agreed on between her husband and his employer, the latter including the insurance carrier. The action is for compensation under an agreement, and compensation for injuries received while engaged in maritime occupation

may be had through state compensation laws where the effect is local and does not materially prejudice the system of maritime laws enforced through admiralty, even though such actions may encroach on admiralty law generally. As stated in Millers' Underwriters v. Braud, 270 U. S. 59, 64, supporting a workmen's compensation claim, where a diver died of suffocation while engaged in his occupation: "Under the circumstances disclosed, regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule, would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations." See also Grant Smith-Porter Ship Co. v. Rohde, 257 U. S. 469; Alaska Packers' Assn. v. Industrial Com. of Calif., 48 U. S. Sup. Ct. 346.

Did the compensation board have jurisdiction if the accident occurred on a ship in navigable waters? If it be assumed that plaintiff's husband was killed when thus engaged, this would not necessarily deprive her of the right to receive compensation under the state law where the effect is local and does not materially prejudice the uniformity of the system of maritime laws enforced through admiralty: see Span v. John Baizley Iron Works et al., 295 Pa. 18, decided simultaneously herewith. But it is a fair inference that the employee fell from the pier while descending to reach the boat or barge on which the injector was located. This finding is sustained by a legitimate inference from all the facts in the case.

The judgment of the court below is affirmed.