Scheiblein *v.* Philadelphia, Appellant.

Argued May 3, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Samuel P. Lavine,* with him *John V. Horan,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellant.

*George H. Detweiler,* for appellee.

OPINION BY BALDRIGE, J., July 13, 1939:

In this compensation case the widow of a fire captain who had been in the employ of the city of Philadelphia filed a claim petition, alleging her husband's death, occurring on April 12, 1937, was the result of an accidental injury sustained in the course of his employment. The awarding of compensation by the referee and the board was affirmed by the court below.

The appellant admits that the deceased sustained an accidental injury, but denies that there is any competent proof that it caused or hastened his death. The evidence disclosed that since 1926, Captain Scheiblein had had diabetes, but that until the time of the accident he had regularly and continuously performed his work as a captain of a city fire boat and, later, of a fire company, with little, if any, discomfort or inconvenience, but he was required to exercise care in his diet.

About midnight of February 21, 1937, when the deceased appeared to be in his normal, physical condition, he responded to a fire alarm. In the discharge of his duties he entered a burning building where later he was discovered, helpless and moaning, leaning on the stairway leading from the second to the third floor. The fireman who found Captain Scheiblein was at first un-

able to recognize him owing to the dense smoke. When he got the deceased out of the building, he observed that he was "battered up." He was immediately taken to the Frankford Hospital where an interne treated him for his wounds, consisting of a number of contusions, brush burns, and a laceration above the right eye. He was then taken home and put to bed, where he remained, according to the finding of the referee and the board, until March 24, 1937, when he was removed to the Philadelphia General Hospital and placed in the metabolic ward and given insulin. While at home and under the care of Dr. Keiser, his family physician, and Dr. Owen, surgeon-in-chief of the police bureau, he complained of pains in his neck, back and legs. His wife alone testified that during this period there was a small discolored bruise on the lower part of his right leg, which was very tender to the touch. Three doctors stated that when the deceased entered the hospital they examined his legs but saw no ulcer. It was not until March 30, 1937, that an ulcer was observed above his heel. On April 10th he was given a blood culture, which revealed the presence of streptococcus germs and two days later he died of a streptococcic infection. The compensation authorities found that the germs' port of entry was at the "bruise or ulcer on the back of his right leg between the knee and the ankle, after which the infection got into the decedent's blood stream;" that his resistance to infection was very low, and the accident so aggravated his condition as to be a contributing cause of his death. An autopsy was held which revealed that death was due to "diabetes mellitus with necrotizing cellulitis and streptococcic bacteremia."

Dr. Keiser testified that, in his opinion, the infection resulted from the trauma deceased suffered on the night of the fire, that there was a mild progressive development thereafter before it reached an acute stage, and the accident hastened the deceased's death. He was questioned by the referee as follows: "In your opinion

there is no doubt that regardless of what the streptococcus infection resulted it came from the trauma which he got the night of this fire? A. Surely, there is no question about that."

Dr. Dillon, chief of the metabolic division of the Philadelphia General Hospital, called by defendant, testified that, in his opinion, the streptococcic infection was not the result of the accident; that the ulcer from which the infection developed was from a thrombus formed in the deceased's leg caused by poor circulation of the leg arteries and an inactive heart due to his diabetic condition. On cross-examination, he stated, however, that "if you bruise a part which already has low vitality, due to the fact of the insufficient blood supply, of course, those tissues are much more susceptible to injury. I mean a given blow on a normal leg wouldn't cause the same damage it does on a diabetic leg." Other physicians called by appellant corroborated the testimony of Dr. Dillon given in direct examination.

The competency of Dr. Keiser's testimony is challenged on the ground that "When he was called to testify there was no evidence on the record of the progress of the decedent's treatment while he was a patient at the hospital (March 24th to April 4th), no evidence of the kind of infection he contracted there, or of the cause of his death." The objection impresses us as being technical and without merit, in view of this record. At the hearing Dr. Keiser testified of his knowledge since 1926 that the deceased was afflicted with diabetes and that "the cause of death was given to be septicemia streptococcus plus thrombo-phlebitis plus diabetes mellitus." No objection whatever was made to any of his testimony until the very end of his rather long examination when the following objection was entered: "By MR. ELLIS: I object to any answers and questions of Mr. Detweilers regarding the doctor's qualifications." This, the only, objection was overruled. If objection

had been made at the time the testimony was given, no doubt the witness, the deceased's family physician for years, could have given more specific information. At no time was there a dispute as to what caused deceased's death. The controversy was whether the accident contributed thereto.

The appellant cites *Johnson v. Valvoline Oil Co. et al.,* 131 Pa. Superior Ct. 266, 271, 200 A. 224, where we quoted from the opinion of the Supreme Court in *Howarth et ux. v. Adams Express Co.,* 269 Pa. 280, 283, 112 A. 536, wherein the late Mr. Justice WALLING, said; "An expert may express an opinion on an assumed state of facts, which the evidence tends to establish, but not on what some one told him, nor on what he learned from another doctor, nor from the history of the case, we know not what nor by whom communicated." That case is not in point, as Dr. Keiser was testifying to what he knew as deceased's physician and the cause of his death, which, as stated, was not in dispute. That was conceded on both sides.

Although we may be impressed by the weight of the medical evidence offered by the appellant, we are not warranted in disturbing the findings of fact of the compensation authorities, based upon competent evidence. If we disregard the testimony of Dr. Keiser, we think there remains sufficient evidence to support this award. As the board stated, the claimant's case does not rest entirely upon medical testimony.

This man was about 65 years of age, afflicted with diabetes, who, from outward appearance, was in his normal condition of health, and able to discharge his active duties regularly until he sustained severe accidental injuries. Immediately thereafter he suffered from pains he did not previously have, became incapacitated, and remained so until his death less than two months later. The natural sequence of events tends to indicate that the mishap at the fire aggravated his previous physical weakness, and the logical and reas-

446

onable conclusion is that the death was the natural and probable result of the accident: *Hanlon v. Gulf Refining Co. et al.,* 115 Pa. Superior Ct. 315, 175 A. 724; *Bunnell v. State Workmen's Insurance Fund et al.,* 124 Pa. Superior Ct. 171, 188 A. 411.

Examining the evidence in the light most favorable to the claimant, we think there was sufficient competent evidence to support the findings of fact by the board. Consequently, we are bound thereby: *Trojanowska v. Sonman Shaft Coal Co.,* 123 Pa. Superior Ct. 17, 185 A. 860; *Nazarey et al. v. Lehigh Valley Coal Co.,* 131 Pa. Superior Ct. 93, 198 A. 899; *Hiles v. Hecla C. & C. Co.,* 296 Pa. 34, 145 A. 603.

Judgment of the court below is affirmed.