## Reap *v.* Kehoe-Berge Coal Company (et al., Appellant).

Argued March 4, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Leo W. White,* with him *Robert W. Smith, Jr.,* and
*Smith, Best & Horn,* for appellant.

*E. C. Marianelli,* for appellee.

OPINION BY HIRT, J., June 26, 1940:

Claimant's husband came to his death in the course
of his employment; whether death resulted from acci-
dent is the single question raised by this appeal. Both
the referee and the board made an award of compensa-
tion and the lower court affirmed.

On the morning of August 11, 1936 claimant's hus-
band, then 47 years of age, assisted with the family
washing and left for his work about 6 o'clock. Claimant
testified that he was apparently in good health and that
he had never had serious illness of any kind. He rode
to the mines in the car of a fellow employee who in a
written statement later given to defendant said: "He
appeared the same that morning as any other morn-
ing", but in response to the question: "Did he at any
time complain to you about not feeling well", replied:

512

"Getting out of the car he said he did not sleep well the night before and had a funny feeling in his chest." These latter statements, however, he repudiated in his testimony before the referee. At the mines decedent changed his clothes shortly before 7 o'clock and was last seen alive as he entered the tunnel, walking into the mines. In the spring of 1936 an unprecedented flood in the mines had stopped all mining operations and, to remove the water, defendant had installed a number of powerful electrically driven pumps. Decedent was a "pump runner" in charge of four of these pumps. His duty was to keep them in efficient operation, work which at no time entailed undue exertion. After proceeding down the main tunnel decedent apparently turned into the slope in which two of his pumps were located and proceeded about 28 feet beyond the switch box which controlled the motors operating the pumps. His body was found about one-half hour after he had entered the mine, about 400 feet down the slope, lying face downward straddling a 20 inch wooden pipe which discharged the water from the pumps out of the mine. At his left temple there was an abrasion of the skin less than an inch in diameter where his head was in contact with the rough wooden pipe.

A post mortem examination of the body was made by two doctors, one of them a pathologist of wide experience. Both of them found no evidence of violence to the body except the small superficial wound on the face and this, both doctors eliminated, because too trivial, as contributing in any way to his death. The examination disclosed some evidence of tuberculosis lesions in the lungs and a moderate amount of sclerosis of the left coronary opening but no narrowing of the vessel. There was no fracture of the cranium nor hemorrhage in the brain. The heart muscle cells on microscopic examination showed some degeneration but from all of the data developed by the examination, neither doctor was able to state the cause of death. No evidence of organic dis-

ease or disorder sufficient to cause death was found, and there was no evidence of violence to the body from which either witness could say that the death resulted from accident. Because they were unable, definitely, to ascertain the specific cause of death, their conclusion was that death may have resulted from a blood condition or from other natural causes or from accident. The cause of death as stated in their report is "shock—cause undetermined." They were careful, however, to define the sense in which they used the word "shock" as meaning "a sudden depression of the vital force of unknown cause" and not limited to shock from violence to the body.

The pumps were driven by powerful electric motors, and overhead in the slope there was an electric line of high voltage. From the evidence it appears that the pumps which were running both before and after decedent went down the slope were not stopped and again started by decedent after he went into the mine and he had no occasion to touch the switches or the electric lines. Immediately after decedent's death, defendant's engineers made a minute examination of the electric line throughout this part of the mine, including the switches, and they found no defect in the cable or insulation or in the switches and no "live spots" anywhere in the system. The doctors who examined the body were careful to indicate that "shock" as used by them in the post-mortem report did not include electric shock. There was no evidence of an electric burn on the body and no other evidence of electric shock and both of the doctors testified that in their opinion death could not be attributed to that cause.

The following is the basic finding of the referee, approved by the board, upon which recovery must rest if claimant can recover: "From the testimony we cannot even infer that the death of Reap resulted from electrocution but we do believe that the circumstances of the death are such as to warrant a conclusion that the

decedent died as the result of shock attending violence to the physical structure of his body during the performance of his duties as a pump runner and we so find such conclusion as a fact." True, death may have resulted from shock but in a sense according to the medical testimony not restricted to shock from accident, and the only evidence of "attending violence" was the superficial brush burn on the face which both of the medical witnesses ignored as a contributing cause of death.

To sustain an award of compensation there need not be direct evidence of an accident as a cause of death but the finding of an accident may be supported by circumstantial evidence if the inference fairly may be drawn that death in fact resulted from accident. "To secure compensation there must be proof both of an accident and of an injury; . . . . . . There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it;" "the mere fact that an employee is overcome while at work does not of itself support an award of compensation;" "Disability, overtaking an employee at his work, is not compensable unless the result of accident . . . . . . neither can death or disability overtaking an employee in the course of his employment and resulting from a natural cause; if it could, it would render the employer an insurer of the life and health of the employee": *Adamchick v. Wyoming Val. Col. Co.*, 332 Pa. 401, 3 A. 2d 377. *Harring v. Glen Alden Coal Co.*, 332 Pa. 410, 3 A. 2d 381. "Disability overtaking an employee at his work, is not compensable unless the result of accident. And the burden is on claimant to prove it was such and not from natural causes": *Gausman v. Pearson*, 284 Pa. 348, 131 A. 247. This burden in the instant case has not been met. Both the referee and the board inferred death from accident, merely from the finding of the dead body of the employee at his regular place of employment. This is not enough; the circumstances must fairly indicate an accidental death; the sudden death of an

employee while doing work which calls for no unusual strain does not raise a presumption of an accident. *Burrell v. State Workmen's Ins. Fd.*, 127 Pa. Superior Ct. 510, 193 A. 439.

This case was well tried before the compensation authorities and it may be assumed that all of the available facts were fully developed. Unfortunately for claimant, she was unable to show specifically the cause of death and in the absence of substantial evidence sufficient to sustain the finding that death was accidental, the judgment must be reversed. Where death may have resulted either from natural causes or from an accident the burden is on claimant to individuate the latter as the cause of death. *Gausman v. Pearson Co.*, supra. Since this burden has not been met there can be no recovery.

The cases cited on behalf of claimant go no farther than to hold that where it is shown that death is accidental it is not incumbent upon a claimant to show the exact nature of the accident or just how it occurred. With these cases we are in full accord. In *Laraio v. Penna. Railroad Co.*, 277 Pa. 382, 121 A. 325, decedent was found beneath an open window, three floors above, suffering from injuries which caused his immediate death. In *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 106 A. 192, decedent's body was found in a ravine below a foot bridge with injuries on the trunk, hands and back of the head from which death resulted. In *Griffin v. Nat. Mining Co.*, 127 Pa. Superior Ct. 588, 193 A. 447, decedent undoubtedly suffered a sudden fall while pushing a coal car in a coal mine and received injuries to the head and other external injuries insufficient in themselves to cause death. There was, however, some evidence that decedent had suffered from chronic myocarditis and there was the additional question in the case whether over-exertion of which there was circumstantial evidence constituted the accident and was the immediate cause of death. None of the cases are authority for the proposition that an award may be made for the death

of an employee in the absence of circumstances fairly indicating death from accident.

Reversed and judgment directed to be entered for defendant.