Bohnet *v.* Stegmaier Brewing Company,
Appellant.

Argued March 2, 1959. Before RHODES, P. J., HIRT,
GUNTHER, WRIGHT, WOODSIDE, ERVIN and WATKINS, JJ.

*James T. Shea,* with him *Shea and Shea,* for appellant.

*E. C. Marianelli,* for appellee.

OPINION BY HIRT, J., April 16, 1959:

In this Workmen's Compensation case the lower court entered judgment on an award in favor of the claimant, following the death of her husband. The facts are not seriously in dispute; the question here is whether the testimony is sufficient to support the conclusion of the board, on affirming the findings of the referee, that "Decedent's death was by accident within the course of his employment."

Karl Bohnet, claimant's husband, had been in the employ of the defendant brewery for about 17 years. In the late afternoon of Friday, September 5, 1952, he with a fellow employe went to the upper floors of the brewery to clean out a number of "blending tanks". They had been directed to clean the tanks on overtime at the end of their normal workday, in accordance with the practice of the company against allowing empty tanks, from which the beer had been drawn, to remain uncleaned over the weekend. Decedent had cleaned tank number 11 on the third floor of the building and was found dead in tank number 13 about an hour later. This tank was of steel, about 18 to 20 feet high and 14 feet in diameter and was glass lined. The only access to the tank was through a hole 16 x 20 inches. One could not walk on the floor of the tank because of its "egg shape" and the decedent, in accordance with the usual procedure had shoved a plank through the open-

ing into place against the opposite wall of the tank. The purpose of the plank was to provide a place for the workman to stand without danger of slipping while cleaning the tank with a hose and brushes.

Carbon dioxide gas is a product of fermentation in the production of beer and the witness Llewellyn— decedent's fellow employe—testified that because of the likelihood of this gas (even in the blending tanks) they check on each other while cleaning them, "because if you go in a gassy tank and anybody gets hurt, we are right there to help them out." The witness checked on Bohnet in tank 13 about forty minutes after he had last seen him; he testified that there then were about 18 inches of water in the tank. Water was running from the hose and it was later found that decedent's cap was covering the outlet at the bottom of the tank where it apparently had fallen; the cap acting "as a stopper" prevented the water from running off. He found the plank in place about 2 feet from the bottom of the tank. Bohnet's body was "jacknifed" beside the plank with both his feet and his head, face down, under water. He was dead and the witness pulled his body from the tank.

At the request of the coroner a post mortem examination was had by a competent and well-qualified pathologist at Hazleton State Hospital. The report in evidence did not attribute death to natural causes but Dr. Foldes who conducted the autopsy stated that from his examination he "could not prove drowning", nor death from a heart condition. The autopsy report stated the cause of death as "Undetermined" and the death certificate likewise stated "cause undetermined".

From the testimony at extended hearings, the referee found: "5. On Sept. 5, 1952 while cleaning the inside of vat No. 13, decedent became asphyxiated, as a result of which, he died inside the vat. 6. Decedent's

death was not the result of natural causes." From the testimony, reflected in the findings the referee concluded: "Decedent's death was by accident within the course of his employment." The board affirmed the referee's findings of fact, conclusions of law and the award upon which the present judgment was entered.

Where there is no eyewitness as to what actually occurred, the burden on a claimant may be met by proof of death from accident within the course of employment, by evidence which is entirely circumstantial. The principle is thus stated in the leading case of *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 119, 106 A. 192: "Where no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment; and, when the dead body of an employee is found on the premises of his employer, at or near his regular place of service, under circumstances fairly indicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment . . ." In *Hiles v. Hecla Coal & Coke Co.*, 296 Pa. 34, 38, 145 A. 603, where the above principle was reiterated, the claimant's decedent, a watchman in the employ of the company, was last seen walking toward a company pier on the Monongahela River where he had duties to perform. His body was found in the river 1200 feet below the pier. Although there was no evidence as to how the drowning occurred the claimant's widow was awarded compensation on the principle of the *Flucker* case, supra. In the *Hiles* case there was evidence, although circumstantial, sufficient to support the material finding of death from accident.

And Mr. Justice KEPHART in applying the well-settled rule of *Kuca v. Lehigh Valley Coal Co.*, 268 Pa. 163, 165, 110 A. 731, said: "Though we may be of opinion, from the apparent weight of the evidence, that a finding should be made adverse to that of the board, we are not at liberty to enter or direct such different finding, where the one adopted by the board is supported by proof." Cf. *Tappato et al. v. Teplick & Eisenberg Co,.* 133 Pa. Superior Ct. 231, 2 A. 2d 545.

There is another class of cases in which, although an accidental death may be inferred from the circumstances, it is nevertheless a matter of conjecture whether death actually resulted from accident or from natural causes. In such cases (of which *Stauffer v. Susq. Col.*, 116 Pa. Superior Ct. 277, 176 A. 740; *Reap v. Kehoe-Berge Coal Co.*, 140 Pa. Superior Ct. 510, 14 A. 2d 147, and *Grentz v. Danny's Restaurant*, 187 Pa. Superior Ct. 625, 145 A. 2d 883, are typical) competent expert testimony is necessary to meet the burden of proof resting on the claimant. The instant case falls within this class. Here the claimant's husband, 47 years of age, had been in good health. There was no evidence of concussion of the brain nor of heart failure nor impairment of any other vital organ and there were no marks on the body. The circumstances were consistent with death from asphyxiation, or strangulation by drowning, but were not sufficient in themselves to prove death from either cause. Medical testimony as to causation was necessary. This was supplied by Dr. Joseph Roth, a well-qualified pathologist. The thoroughness of his examination is indicated by 75 pages of testimony in this record. We need not review it in detail. From the circumstances, in the light of the autopsy findings, he stated: "That a sufficiently high concentration of carbon dioxide gas would render a person unconscious if he remained in the at-

mosphere sufficiently long." Between the alternative of death directly from the gas and death from drowning, whether or not affected by the gas, Dr. Roth stated unequivocally: "The man died of asphyxiation either from the strangulation of drowning or [he] expired by gas." This testimony supports the ultimate finding of the referee, affirmed by the board "That decedent became asphyxiated, as a result of which, he died inside the vat."

Appellant relies on *Reap v. Kehoe-Berge Coal Co.,* supra, and *Grentz v. Danny's Restaurant,* supra. In both of those appeals we held that judgment should be entered for the defendant. In the *Reap* case both the referee and the board inferred death from accident, merely from the finding of the dead body of the workman at his regular place of work under circumstances which did not fairly indicate death from accident; and the burden on claimant of proving death from accident and not from natural causes was not met by medical testimony. So also in the *Grentz* case the circumstances demonstrated that death may have resulted from coronary occlusion alone. In that case there was no unequivocal testimony of death from heat exhaustion either in itself or as a contributing cause and for want of such proof the claimant properly was denied recovery.

Judgment affirmed.