Monahan *v.* Seeds & Durham et al., Appellants.

Argued May 9, 1939.  Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank R. Ambler,* with him *H. Rook Goshorn,* for appellants.

*J. Webster Jones,* with him *Elmer C. Pfeiffer,* for appellee.

OPINION BY MR. JUSTICE DREW, June 19, 1939:

Plaintiff, the widow of Leo P. Monahan, for herself and her children, filed a claim for compensation against the defendant, as the employer of her deceased husband, alleging that he had died as the result of an accident occurring in the course of his employment. To this claim the employer filed an answer averring that Monahan's death was not due to an accident, and in this answer the employer's insurance carrier joined. After the first hearing the referee concluded that the death was not the result of an accident in the course of employment and dismissed the claim. On appeal the Workmen's Compensation Board held that there was an accident and ordered a further hearing to determine the relation between the accident and the death. At the conclusion of the second hearing the referee again dismissed the claim, but on appeal to the Board this ruling was likewise reversed and plaintiff's claim was allowed. From the judgment of the Court of Common Pleas upholding this award an appeal was taken to the Superior Court which sustained the lower court. This appeal followed.

At the time of his death, Monahan was employed as a day timekeeper. His regular duties were almost entirely of a clerical nature. He kept a record of the work performed by the workmen during the day, and this required him to make two rounds of the construction job daily. The remainder of his work he could do when he saw fit, and he frequently worked on his books at night.

On the morning of Friday, July 27, 1934, Monahan went to work as usual at 7 o'clock. There is no evidence

as to what he was doing during most of the day, but at four o'clock in the afternoon he was seen "taking time". When the night timekeeper came on duty in the evening, he and Monahan went to dinner together, and, upon their return to the office, checked the books until midnight. They then went out for a midnight supper, but the record does not disclose how long they were gone.

The occasion for the particular work they were doing that night was the checking of a monthly statement which the company was required to submit to the government showing the time which each of the employees worked. This report was not due, however, until the 5th of the following month. There was a discrepancy in the figures for the June report, and it was in an effort to discover the error that Monahan and the night timekeeper were checking the figures. According to the testimony of the night timekeeper, about six o'clock Saturday morning Monahan, who was reading the figures to his companion, stated, "Here is the mistake", and then slumped forward. When the company doctor arrived Monahan was dead.

The Board, reversing the findings of the referee, found that Monahan was suffering from advanced arteriosclerosis and that the immediate cause of his death was a cerebral hemorrhage brought on by over-exertion. A very careful examination of the record convinces us that the evidence completely fails to support the conclusion that there was a causal connection between the alleged over-exertion and his death.

If death came during the course of employment in an ordinary way natural to the progress of the disease with which Monahan was afflicted there can be no recovery, but if the death was due to an accident during the course of employment the right to compensation would not be defeated by the fact that Monahan had a chronic ailment which rendered him more susceptible to injury than an ordinary person would be: *Clark v.*

*Lehigh Valley Coal Co.*, 264 Pa. 529. Since Monahan's death might have been the result of one of several causes the burden is on the claimant to show that it was an accident in the course of employment that actually produced death: *Gausman v. Pearson Co.*, 284 Pa. 348.

During the course of the two hearings five physicians were called to testify as to the cause of death and the relation, if any, between Monahan's employment and his death. The testimony given by these experts can support but one conclusion—that it would be impossible to say that the death was the result of an accident in the course of employment. In reviewing the testimony of these experts we have in mind the standard of proof required in cases of this nature: When, in cases of this class, expert testimony is relied on to show the connection between an alleged cause and a certain result, it is not enough for the doctors to say simply that the ailment in question might have resulted or "most probably" came from the assigned cause, or that the one could have brought about the other; they must go further and testify at least that, taking into consideration all the attending data, it is their professional opinion the result in question *came* from the cause alleged: *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199; *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264.

Dr. Flotte, the family physician, testified that any exertion or strain is liable to cause a hemorrhage where one is suffering from a disease of the cardio-vascular system. He further stated that extra long hours of work *might* be an excessive strain which would accelerate death, but he was unable to state that the death in this case resulted from such a cause.

Dr. Mock, the physician who was called when Monahan died, was of the opinion that death was due either to cerebral apoplexy or an acute dilatation of the heart: He said that without an autopsy it would be impossible to say accurately from which death resulted, but from the history he obtained, that decedent had an affected

heart, he was of the opinion that acute dilatation of the heart was the most probable. He further stated, however, that whichever of these two conditions caused his death it had no relation to his work, but on the contrary was the natural consequence of the disease from which he suffered.

Dr. Stroud, an impartial heart specialist, was called by the referee at the claimant's request. He testified that "23 hours effort without cessation" *might* be a contributing factor in Monahan's death, but as already indicated such an expression of opinion falls short of the standard of proof necessary to establish a connection between the alleged cause and the death. Dr. Stroud further stated that persons affected with arteriosclerosis are just as likely to die without any excessive mental or physical effort, and that in this particular case one could not say that decedent's occupation had any connection with a cerebral hemorrhage.

The testimony of Dr. Geckeler, another heart specialist, likewise bears out the conclusion that Monahan's death was not necessarily attributable to over-exertion. He was of the opinion that "the cause of death most likely was coronary thrombosis", and that "over-exertion could have no part in causing a thrombus." When asked what effect extra hours of work would have upon death if Monahan died of a cerebral hemorrhage he replied that "it might play a part." The fact that over-exertion might have some part in causing a cerebral hemorrhage is no indication, however, that such a causal connection existed in this case: *Fink v. Sheldon Axle & Spring Co.,* 270 Pa. 476.

The fifth medical witness, Dr. Kalodner, testified that he was of the opinion that Monahan died as a result of a cerebral hemorrhage and that death was accelerated by over-exertion. The witness had never seen Monahan either before or after his death. That this expression of opinion was but a conjecture on his part is obvious from his later statements which indicate that the real cause

of death could not be ascertained with any degree of preciseness. The burden of showing that death was due to an accident in the course of employment is not met by testimony which is so conflicting or of such a nature as to render any inference drawn therefrom a mere guess or conjecture: *Gausman v. Pearson Co.*, supra. On cross-examination Dr. Kalodner testified as follows: "Q. Doctor, would you say—could you say the man didn't die from thrombus? A. I didn't say that. Q. Could you say that? A. No, I could not." The medical testimony, including that of Dr. Kalodner, is undisputed that if Monahan died as a result of a thrombus extra hours of work could not be said to have precipitated the death.

Dr. Kalodner admitted that his opinion that death was due to a cerebral hemorrhage brought on by overexertion was based entirely on the alleged fact that Monahan had worked almost continuously for 23 hours. Since the evidence is uncontradicted that death might have occurred at any time without the existence of any supervening cause it is difficult to see how the mere existence of a factor which might hasten death is proof that such factor did cause the death. His statement that the mere existence of a factor which might hasten death was the sole basis for inferring that it actually did cause death so qualifies Dr. Kalodner's prior statement of opinion, that it is apparent that the most that can be said from reading his testimony is that the over-exertion could have accelerated the death.

Furthermore, in basing his opinion as to the connection between the alleged over-exertion and Monahan's death on the assumption that the latter was subjected to long hours of mental strain and concentration during "twenty-three hours of practically continual work, with putting every effort pondering over the books", his premise is not supported by the record. Although Monahan reported for work Friday morning, there is no evidence that he was subjected to strain of any sort

during the day. The record discloses that he did not begin working on the books until the night timekeeper came on duty and that even during the night they did not work steadily. There is, therefore, no basis for inferring that Monahan was subjected to 23 hours of continual strain.

While the Board's findings of fact when supported by competent evidence are binding and cannot be disturbed, nevertheless the question whether or not there is evidence to support a particular finding is one of law and may be reviewed on appeal: *Stahl v. Watson Coal Co.*, 268 Pa. 452. In the instant case it is apparent from a review of this medical testimony that the award cannot stand, since the claimant has failed to meet the burden of establishing a probable, direct relation between the alleged cause and the death. Of the five medical experts called, four testified unequivocally that it was impossible to definitely establish any relationship between the extra hours of work and the death. The one physician who attempted to establish such a connection succeeded only in showing that over-exertion could have brought about the death. To say, as the Board did, that death did result from long hours of work is at most a pure guess, for the evidence conclusively shows that it was impossible under the circumstances to determine with any degree of certainty that the alleged over-exertion had any direct relation to the death.

In cases of this nature, there is always grave danger of overlooking the fact that the Compensation Act is what it purports to be—an act to compensate for accidental injuries and not one to insure the life and health of the employee. To sustain a claim for compensation where even the best medical experts are unable to connect the death with the alleged cause would disregard the purpose of the Compensation Act and would render the employer an insurer. Since there is no evidence to support the Board's finding, the award can not be sustained.

Judgment of the Superior Court is reversed and judgment is here entered for appellants.

Mr. Justice MAXEY and Mr. Justice STERN dissent.