## Hartin v. Hysee Inghram Tire Company et al., Appellants.

Argued April 14, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*H. E. McCamey,* of *Dickie, Robinson & McCamey,* with him *William W. Matson,* for appellants.

*Harry J. Nesbit,* for appellee.

OPINION BY STADTFELD, J., July 16, 1943:

This appeal is taken by the defendant from the judgment of the Court of Common Pleas of Allegheny County, Pennsylvania, (Hon. A. MARSHALL THOMPSON, J.) wherein judgment was entered in favor of Lena Mildred Hartin, widow of Archie Hartin, deceased. On May 3d or 4th, 1938, Archie Hartin, now deceased, was buffing tires and while doing so a piece of steel wire struck his right eye. Dr. Grove removed a microscopic particle of steel from the cornea on May 4th. Decedent did not return to Dr. Grove. On May 6, 1938, decedent entered Columbia Hospital's emergency service and came under the care of Dr. Conti who discovered a slight abrasion. On May 7th Dr. Conti saw him again, gave him a Fluorescein test and this test showed the cornea was healed. This was Saturday. Dr. Conti requested him to return Monday, May 9th, for final discharge by Dr. McCaslin, the eye specialist in charge of the clinic. The deceased saw Dr. McCaslin on May 9th and Dr. McCaslin discharged him, giving him the usual eye wash prescription. Dr. McCaslin wrote out the discharge so that the deceased, who was a deaf mute, could read it and the claimant offered these writings in evidence as Exhibits "B" and "C." On May 10th decedent returned to Dr. McCaslin complaining of irritation and examination disclosed an abrasion on the same eye. On May 11th deceased was

admitted to the hospital and died on May 14th from delirium tremens. The widow filed a claim petition, which came on for hearing before Referee Gibb who disallowed the claim. The claimant then took an appeal to the Workmen's Compensation Board and the Board reversed the Referee, substituted the eighth finding of fact and awarded compensation to the widow. The defendant took an appeal to the court of common pleas, which court dismissed the defendant's exceptions and affirmed the award in favor of the claimant. This appeal by defendant followed.

The eighth finding of fact of the board is as follows: "The deceased suffered a single condition of the eye, which although apparently the wound had healed, recurred and caused his hospitalization. The injury and the ensuing pain suffered by deceased precipitated the attack of delirium tremens which caused his death on May 14, 1938."

We quote from the opinion of the board: "Dr. Earl Vandergrift, who performed the autopsy, was called by claimant. He testified that there was no evidence of infection within the right eye or about the brain; brain fluid was clear; anterior chamber and posterior chamber of the eye showed no evidence of infection; there were two areas of warty vegetation on the mitral valve similar to those associated with acute rheumatic fever, but Aschoff bodies were not found. The history given the doctor was that claimant was admitted to the hospital on May 11, 1938, complaining of severe pain in the right eye, and that he died on May 14, 1938, one of the causes of death being given as delirium tremens. He testified he found nothing in his examination to indicate that deceased was an alcoholic, but that an alcoholic does not necessarily show any signs in the kidney or the liver. When asked his opinion concerning the cause of death, he said: 'I think these were contributory causes, acute ulcerated cornea, acute varicose endocarditis, and the delirium tremens, and

the reason I say that is, it's all that I have to base my evidence on; considering the history and the findings at autopsy.' He admitted that delirium tremens does not always leave traces which can be found on autopsy; also that he made a culture of the blood and found no growth. When asked whether the ulceration of the cornea had any relation to the death, he replied: 'Oh, I think it would have, it would have some contributory cause or effect. At least that's the condition for which the man was admitted,' and continued, 'The only connection I could see would be that some injury of this kind might have a tendency to cause delirium tremens to develop. That's the only reason I can see for it.ᴬ Also, Dr. Vandergrift was of the opinion that deceased had had rheumatic fever which was the cause of the varicose endocarditis and that the endocarditis did not have its origin in the eye injury, which was a superficial ulceration of the cornea.

"*There is adequate proof of record that deceased sustained the accident, and we think there is also sufficient evidence that the eye condition for which deceased was hospitalized was a continuation of a recurrence of the original eye injury.* There is no gap in time at all according to the evidence. The deceased was examined by Dr. Conti (then an interne) on Saturday, May 7, and told to return on May 9. Dr. McCaslin thought the eye was healed, but the next day,—May 10—the deceased came back complaining of his eye. The medical testimony adduced on behalf of claimant adequately supports a finding that there was only one eye condition and the injury and the pain precipitated the delirium tremens which was the cause of death: Monahan v. Seeds & Durham, 336 Pa. 67." (Italics Supplied).

To the lay mind delirium tremens is ordinarily associated with excessive alcoholism, but there is no evidence in the record which would support such a finding. We quote from a very comprehensive opinion by Judge

A. MARSHALL THOMPSON on behalf of the court in banc: "On the question—whether delirium tremens can ever be the result of a physical injury, we have been referred by counsel for the claimant to some text writers, who have discussed this question as follows: Osler's Principles and Practice of Medicine, p. 389 (c), 11th Edition Revised by Thomas McCrea, M. D. (1930): 'Delirium tremens, an incident in chronic alcoholism, results from the long continued action of the poison. The condition was first accurately described early in the 19th century by Sutton of Greenwich, who had numerous opportunities of studying the different forms among sailors. One of the most careful studies was made by Ware of Boston. A spree in a temperate person, no matter how prolonged, is rarely if ever followed by delirium tremens; but in a habitual drinker a temporary excess may bring on an attack or it follows the sudden withdrawal of alcohol. An accident, a sudden shock, or an acute inflammation, particularly pneumonia, may determine the onset. It is especially apt to occur in drinkers admitted to hospitals for injuries, especially fractures. ......' Accidental Injuries, Kessler (1931) p. 502: *Delirium Tremens.* Delirium tremens may begin without any apparent cause. Of 250 cases, Wassermeyer found only 15 per cent in which the direct causes were acute infections, injuries and infections. Severe injury may precipitate the delirium. Bone fractures are more liable to do so than an injury to soft parts of the body. Contusions of the chest are most likely to produce delirium tremens. It is of importance that the injury take place at the beginning of the delirium. The precipitation of a delirium through an accident is assumed when there is an interval of two or three days between the accident and the beginning of the delirium. If the delirium is noticed immediately after the accident, it is not necessarily ascribed to the accident, nor is it assumed to be the cause if the

attack does not appear until weeks after the accident. ......' Douglas Knocker. Accidents in Their Medico Legal Aspect, (1910) p. 57 sec. (3): '(3) Delirium Tremens. This condition usually comes on in chronic alcoholism, and its onset is frequently determined in the alcoholic by some injury or surgical operation. It is a matter of common knowledge amongst medical men how frequently patients in hospitals who have sustained a fracture or some injury necessitating their admission into the wards develop this condition three or four days subsequently.

"'...... In most cases the symptoms begin to pass off in three or four days; sleep comes to the patient, the tremors cease, and the hallucinations of his dis-ordered brain disappear; very gradually recovery takes place. In other cases the debilitated heart fails, and the patient dies from exhaustion.'"

Dr. Paul H. Franklin called on behalf of the claim-ant testified: "It is my opinion, as the hospital record indicates, on admission, the man was suffering severe pain in the right eye, having received a wound of the right cornea from this piece of steel which was ex-tracted, and notice in the record that two days later, other foreign bodies were removed from the conjunc-tiva of the upper lid; that there had been a painful condition of this right eye, and at autopsy there was ulceration of the cornea found. It is my opinion that it was not the—death was not due to infection from this eye as the anterior of the eye cavities were not infected, and there was no apparent blood stream in-fection. It is my opinion that the shock and pain of this eye injury precipitated the attack of delirium tremens from which the man met his death.

"...... I am basing my idea on the fact that there was a reopening of the wound in the cornea at the same position where it had been injured after it had been reported as having healed at that point."

We quote from the opinion of Judge THOMPSON: "It is rather difficult for a layman to understand how any injury to the eye suffered on May 3d was completely healed on May 9th, and the same spot was infected and definitely ulcered on May 10th. It is apparently the opinion of Dr. Vandergrift, and also the opinion of Dr. Franklin, who later testified that the supposed healing must have been a surface healing and that there was still trouble beneath the surface, which broke open afresh on the following day."

When we consider the succession of events and their continuity, and the medical testimony, and the absence of any evidence of a second accident, to which the condition could be attributed, we agree with the conclusion of the board and of the court below that there was substantial competent testimony before the board to sustain its finding on behalf of claimant.

The assignments of error are overruled and judgment affirmed.