Grentz, Appellant, *v.* Danny's Restaurant.

Argued September 15, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and WATKINS, JJ. (ERVIN, J., absent).

*John F. Naulty,* for appellant.

*Frank R. Ambler,* for appellee.

OPINION BY HIRT, J., November 14, 1958:

Bruno A. Grentz, an experienced chef, had been employed by the defendant in his diner and restaurant for a number of years. There were other cooks under him. His normal working day ended between 3 and 4

p.m. On the morning of July 31, 1954 he left home for his work at about 7:30, apparently in his normal physical condition. The highest recorded temperature on that day was 101°. In the kitchen area of the restaurant, where he worked there were several large ovens and the testimony, which must be accepted in the light of the findings of the board, was that it was 10 to 12 degrees hotter in the kitchen than outside the building. On the above date he performed his usual duties without complaint. About 2:30 on that afternoon Grentz was observed to be sitting outside the kitchen door with his head in his hands. Two hours later he was found sitting on a chair in the diner and his condition then was described as most serious. He was taken to Montgomery Hospital in an ambulance but on arrival was pronounced dead. For 6 years prior to his death (at age 68) Grentz had been under the care of Dr. Dale Garber for coronary sclerosis which had progressively worsened. Immediately prior to his death, according to the doctor's testimony, he carried "nitro-glycerine at all times which he took occasionally and he was also taking aminophyllin, 1½ grains 3 times a day."

In this workmen's compensation case, brought by the dependent widow, the referee found: "3. That the claimant's decedent sustained an accidental injury on July 31, 1954, while in the employ of the defendant from which he died on the same day. 4. The nature and cause of said accidental injury and death were exposure to excessive heat coupled with a pre-existing coronary sclerosis, which together resulted in coronary occlusion and heat exhaustion while claimant's decedent was working in the kitchen of the defendant's diner." On these findings, compensation was awarded. On appeal, the board affirmed the referee's findings of fact, conclusions of law and the award. On further

appeal however Judge DANNEHOWER for the court en banc reversed the board and entered judgment for the defendant. In so disposing of the appeal the court concluded that the testimony, viewed in the light most favorable to the claimant, was insufficient as a matter of law to prove that heat exhaustion either caused or was a contributing cause of decedent's death.

Heat prostration may constitute a compensable accident if the circumstances indicate that injury or death resulted from it during the course of the employment. *Lane v. Horn & Hardart B. Co.*, 261 Pa. 329, 104 A. 615; *Trovato v. W. McCahan Ref. Co. et al.*, 122 Pa. Superior Ct. 499, 186 A. 163; *Consentino v. Union Paving Co.*, 113 Pa. Superior Ct. 295, 173 A. 470. Such cases when compensable fall within the second class as laid down by the then Mr. Justice STERN in *Parks v. Miller P. Mach. Co.*, 336 Pa. 455, 9 A. 2d 742. *Toland v. Murphy Brothers*, 172 Pa. Superior Ct. 484, 94 A. 2d 156; *Heinold v. Pgh. Br. Mfg. Co. et al.*, 149 Pa. Superior Ct. 409, 27 A. 2d 267 are other cases within that class. Of course to be compensable heat exhaustion or heat stroke need not be the sole cause of death; it is sufficient if a contributing cause.

The death certificate, in evidence on claimant's offer, gave "coronary occlusion" as the cause of Grentz' death. Dr. Garber had treated the decedent for a serious heart ailment since 1948. And at the hearing before the referee in response to the question: "Would you say that the temperature [of 110 to 115 degrees] combined with his prior heart condition could cause death?" he replied: "Oh . . . that's an awful question to ask me. It certainly aggravated his condition and *might* cause death, sure." And when the question was repeated, he testified: "Well, it certainly *could* aggravate his condition and cause death, sure." He frankly conceded however that without any aggravating cir-

cumstances, claimant's decedent, because of his heart condition, could have died "sitting in a chair or he could die in his sleep." Dr. Jacob Benson, a specialist in tropical medicine, did not examine claimant's husband. But from a consideration of the testimony at the hearing, in response to the question: "Is it your opinion . . . that without the heat . . . in the place of business and the outside temperature of the day Mr. Grentz would not have died?" he answered: "That is a big question . . . I would say this, if I may digress: Heat exhaustion *can* kill without any prior condition, heat exhaustion alone." And he said with reference to the temperature on that day: "I would say maybe that he might be exhausted." And further in his cross-examination he stated: "I'm not making any diagnosis at all . . . I was merely asked for an opinion, which is what I'm giving." "Q. As to what *might* have happened? A. Yes sir." And when recalled later, in response to a hypothetical question he stated: "Well, it is my opinion that *first* he could just as well have expired from heat exhaustion or heat stroke without a prior cardiac condition; second with his prior cardiac condition it is very reasonable in my opinion that the combination is lethal . . ." We need not refer to the testimony of Dr. Benjamin A. Gouley, called by the defendant, except to note that there was no serious conflict, for the board to resolve, in the medical testimony as a whole. Cf. *Toland v. Murphy Brothers,* supra.

"Where there is no obvious causal relationship [between the accident and death], unequivocal medical testimony is necessary to establish the causal connection": *Washko v. Ruckno, Inc.,* 180 Pa. Superior Ct. 606, 121 A. 2d 456. Here the medical testimony does not go further than to indicate that death *might have* or *could have* or *possibly did* come from heat exhaustion as a contributing cause; this is not sufficient proof

of a compensable accident. An expert opinion that a condition "could have" resulted from a specified cause is inadmissible. *Nestor v. George et al.,* 354 Pa. 19, 46 A. 2d 469. Proof of high temperature which *might* have hastened death is not sufficient to constitute proof that such factor was a contributing cause of death. *Monahan v. Seeds & Durham et al.,* 336 Pa. 67, 6 A. 2d 889; *Roland v. Frantz et al.,* 156 Pa. Superior Ct. 640, 41 A. 2d 423. Other authorities to the same effect are referred to by Judge WRIGHT in *Washko v. Ruckno, Inc.,* supra.

There was no unequivocal testimony of an accident in this case and the lower court so found. The question whether the findings were supported by the evidence was one wholly of law and therefore was properly before the lower court on appeal. *Monahan v. Seeds & Durham et al.,* supra.

Judgment affirmed.