## Sacks v. J. L. Freed & Sons

718

*Ella N. Peterson*, for plaintiff.
*Frank R. Ambler*, for defendants.

FORREST, J., June 29, 1959.—This is an appeal by a defendant from the decision of the Workmen's Compensation Board which amended some of the referee's findings of fact and conclusions of law, but affirmed his award of compensation. Defendant has filed exceptions which assign the following as error: (1) Finding that immediately before the alleged accident, claimant had just consumed a heavy noonday meal, that claimant had inhaled fumes the morning before he carried certain tubs out of a basement; (2) that claimant's coronary infarction was superinduced by claimant's overexertion following a heavy meal; (3) that claimant's disability was the result of an "incident" at work; (4) the conclusion of law that since claimant's disability resulted from the "occurrence" at work, he is entitled to compensation; (5) the affirmance of the referee's award, and (6) the dismissal of the appeal from the referee to the board.

Claimant, Woodrow W. Sacks, for five years prior to and including December 11, 1957, was employed by defendant, J. L. Freed & Sons, automobile dealers, as an ordinary laborer. His work consisted of cleaning cars and other manual labor which he was requested to perform in and about the garage and showroom of the employer. During the morning of December 11, 1957, he worked in a supply or paint room. He ate a hearty lunch, as was his custom. Immediately thereafter he and a fellow employe loaded ashes in cans and carried two loads weighing 60 to 120 pounds each up a narrow step stairway and put them on a truck. Claimant had

performed this particular kind of work under precisely similar circumstances approximately every three weeks during all the years of his employment at Freed's. There were usually about eight cans to be carried out. Claimant had never previously done this particular work immediately after lunch. While carrying the third load upstairs claimant felt a pain. He had not previously fallen, slipped or tripped. He walked downstairs and thereupon fainted.

Dr. Paul L. Bradford was summoned. He had a cardiogram made on December 13, 1957. This showed "a slight, very slight, heart enlargement." Dr. Bradford arranged for claimant to go to North Penn Hospital and claimant was a patient there from December 15, 1957, to January 4, 1958. He was then 47 years of age, and had performed hard manual labor during his entire manhood until the incident of December 11, 1957, without awareness of any symptoms of heart disease and without any medical history of heart disease.

The hospital records contain a history taken and diagnosis made by Dr. Bradford. They show that claimant collapsed "after severe effort following heavy meal," that he has a valvular heart disease with some coronary insufficiency and that he has experienced "easier fatigue and shortness (of) breath for past 2-3 months," and that the doctor's primary diagnosis of the claimant was: Myocardial infarction (process leading to development of necrosis of muscular tissue of heart) due to coronary artery thrombosis (formation of clot of blood in coronary arteries of the heart), valvular heart disease, mitral insufficiency (pertaining to arterioventricular valve of left side of heart), and aortic stenosis (narrowing of the aortci orifice at the base of the heart, or a narrowing of the aorta itself).

Hospital records are admissible "as evidence of medical and surgical matters therein stated": The Pennsylvania Workmen's Compensation Act of June

21, 1939, P. L. 520, as amended, 77 PS §835, but "they are not admissible to prove the happening of an accident. . . . Frequently these hospital records contain a history of the case wherein the patient on entry to the hospital claims that he sustained the injuries in a certain manner at a certain time and place. Such statements would clearly be self-serving if used later in a claim for compensation and would be inadmissible because hearsay and not part of the *res gestae*": 2 Skinner, Pennsylvania Workmen's Compensation Law, p. 730. Claimant was competent to testify as to his experience with fumes, but he did not testify about this. The testimony of Dr. Bradford on this subject was not only pure hearsay but somewhat contradictory.

The decisive question in this case is whether the "incident" or "occurrence" which disabled the claimant was an accident within the meaning of The Pennsylvania Workmen's Compensation Act.

"The word accident—as used in the act—must be interpreted in its usual, ordinary, popular sense. Webster has defined it as 'an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance, contingency.' . . . That which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforseen. . . .": Lacey v. Washburn & Williams Co., 309 Pa. 574, 577, 578 (1933); Adamchick v. Wyoming Valley Collieries Company, 332 Pa. 401, 409, 410 (1938).

". . . disability of a normal, healthy workman, with no physical weakness, other than is common to all men, may be compensable though the result of muscular strain or internal lesion in the performance of ordinary manual labor usual to the employe's work":

Rovere v. Interstate Cemetery Co., Inc., 164 Pa. Superior Ct. 233, 237 (1949), quoted in Gammaitoni v. Gasparini Excavating Company, 185 Pa. Superior Ct. 643, 647 (1958).

The foregoing principles have been applied in heart cases. Thus, in Witt v. Witt's Food Market, 122 Pa. Superior Ct. 557 (1936), an award was sustained on a finding of an accident which damaged claimant's heart. At the time he was "well and healthy" and injury resulted from strain in lifting a quarter of beef in the course of his usual work. In Buck v. Arndt, 153 Pa. Superior Ct. 632 (1943), claimant's heart was in sound condition up to the time of the accident, which consisted of strain of the heart muscles brought about by lifting an ordinary piece of lumber over claimant's head. This was done in the usual way, but claimant felt such pain that he had to cease work immediately. The Superior Court in sustaining an award stated, page 634: "The right to compensation for an unexpected injury caused by the performance by the employee of his usual work in the usual manner is clear . . . the controlling question of law is whether there is evidence sufficient in quantity and quality to support findings that the injury resulted from the performance of the work and was unforeseen and unexpected."

Dr. Bradford on December 11, 1957, examined claimant and detected heart murmur. A cardiograph indicated left ventricular stress. X-ray indicated a slight heart enlargement. In response to leading questions propounded by the referee, the doctor testified that claimant had a coronary occlusion with infarction which, in his opinion, resulted from overexertion on December 11, 1957. However, on cross-examination he testified:

"Q. Isn't it more likely that the attack was spontaneous due to the progression of his condition?"

"A. *I don't know,* because I hadn't seen the man; . . . he never had a previous cardiogram taken."

"Q. It could be spontaneous?"

"A. Yes; and I have had people come in who have had normal cardiogram and a week later had a coronary . . ."

"Q. And you have had them where there has been no effort—without them doing anything at the time?"

"A. Yes."

Later he testified that sudden exertion or the mere motion of the heart when the subject is sitting or lying in bed, not exerting himself at all, may be sufficient to break vegetation or a clot in a vein loose so as to result in a sudden occlusion or blocking. He stated that in the instant case he *supposes* that a cholesterol deposit blocked up the artery, and that sudden exertion may be sufficient to break loose some vegetation on the leaf of the heart valves or a clot in the vein. However he admitted that the motion of the heart alone, without any exertion, may be sufficient to cause the vegetation or clot to break loose. He testified that whether or not people with valvular heart disease live normally for long periods depends upon the degree of damage to the valve and that exertion such as claimant made possibly could cause additional damage.

"It is well settled that . . . findings of fact by the compensation authorities, if supported by the evidence are binding upon the courts; and . . . on appeal from an award the evidence must be viewed in the light most favorable to the claimant": Oliver v. Westinghouse Electric Corporation, 186 Pa. Superior Ct. 604, 606 (1958). ". . . the credibility of an expert witness as determined by the board is not reviewable as a matter of law": Zilek v. C. C. Coal Company, 186 Pa. Superior Ct. 628, 631 (1958). ". . . it is within the province of the board to . . . accept or reject the testimony of any witness, even of a medical expert . . .": Mee-

han v. Philadelphia, 182 Pa. Superior Ct. 161, 166 (1956).

However, where the medical testimony does not go further than to indicate that a condition "could have" resulted from a specified cause, it is inadmissible: Grentz v. Danny's Restaurant, 187 Pa. Superior Ct. 625, 630 (1958). " 'The witness would have to testify, not that the condition of claimant might have, or even probably did, come from the accident, but that " in his professional opinion the result in question came from the cause alleged"; for . . . a less direct expression of opinion would fall below the required standard of proof, and therefore would not constitute legally competent evidence.' ": Nestor v. George, 354 Pa. 19, 24 (1946).

In Monahan v. Seeds & Durham, 336 Pa. 67, 74 (1939), Mr. Justice Drew in his opinion for the Supreme Court wrote: "To say, as [the doctor and] the Board did, that . . . [the coronary infarction or occlusion] did result from . . . [over-exertion] is at most a pure guess, for the evidence conclusively shows that it was impossible under the circumstances to determine with any degree of certainty that the alleged over-exertion had any direct relation to the [coronary occlusion] . . . In cases of this nature, there is always grave danger of overlooking the fact that the Compensation Act is what it purports to be—an act to compensate for accidental injuries and not one to insure the life and health of the employee.

". . . where, as here, the point . . . requires special scientific knowledge for its solution, . . . if the plaintiff, for the purpose of proving what he claims to be the efficient cause of particular results for which he is claiming damages, undertakes to speak by an expert on that issue, because it requires scientific knowledge for its elucidation, the testimony of the witness produced for that purpose must be reasonably

consistent, and unequivocal": Mundano v. Phila. Rapid Transit Co., 289 Pa. 51, 60 (1927). See also 1 Henry, Pennsylvania Evidence, §565, p. 577.

In the instant case, Dr. Bradford, the only expert who testified, was not claimant's family physician and never examined claimant before the latter felt a pain on December 11, 1957. The referee did elicit from him an opinion that the reason why claimant felt the pain was "overexertion." However, the doctor's testimony under cross-examination leaves the record in such a state that the onset of pain while claimant was at work may just as plausibly be attributed to the ordinary progression of the disease as to any effort, usual or unusual, by claimant. The finding by the referee and by the board that there was an "incident" at work or an "occurrence" at work, rather than an "accident", may not be significant, but on the other hand it may indicate that the referee was impressed by the indecisiveness of the medical testimony.

We cannot affirm an award based upon this ambiguous testimony of the sole medical expert and we must remit the case to the board for further hearing and determination as to whether claimant's occlusion was unexpectedly caused by the performance of claimant's work or whether it was a spontaneous attack occurring in the ordinary progression of claimant's preëxisting condition, whatever that may have been.

And now, June 29, 1959, exception no. 1 is sustained only insofar as the Workmen's Compensation Board found that claimant had inhaled fumes the morning before he suffered a coronary infarction, exceptions nos. 2 to 6 inclusive are sustained, and it is ordered that the record be remitted to the board for further hearing and determination. Exception to claimant.