Adams *v.* Dunn, Appellant.

Argued April 11, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*John Will, Jr.,* with him *Neely & Will,* for appellant.

*George J. Barco,* with him *Yolanda G. Barco,* and *Barco and Barco,* for appellee.

OPINION BY WRIGHT, J., June 15, 1960:

This is a workmen's compensation case. The referee found that claimant was totally disabled as the result of an injury by accident while in the course of his employment, and made an award. The Workmen's Compensation Board sustained the employer's appeal, and entered an order of disallowance. Upon claimant's appeal, the Court of Common Pleas of Crawford County vacated and set aside the board's order of disallowance, and reinstated the award. This appeal by the employer followed.

The record discloses that claimant, Mell V. Adams, Sr., aged 61 years, was employed as a grade checker

for W. L. Dunn, who was engaged in the business of road construction. Claimant's customary job was to set grade and slope stakes so that the equipment operators could do the required cutting and filling. On June 17, 1957, when claimant reported for work at 7:00 A.M., there was so much water and mud where the work was to be done, resulting from a heavy rainfall, that the members of the road crew, some 25 in number, were sent home. There remained at work, in addition to claimant and a few men hauling gravel, only the superintendent, Foster, and the foreman, Marsteller. Claimant traveled up and down over the slopes of the road holding a tape measure and giving readings to Marsteller, who held the tape at the center of the road and recorded the various measurements. The cuts and fills upon which claimant was climbing were from 5 to 15 feet in length. The ground was mucky and slippery, stuck to claimant's boots, and traveling over it was difficult. The temperature recorded by the Meadville City Engineer was 75 degrees at 7:00 A.M., 84 degrees at 9:00 A.M., and 86 degrees at 11:00 A.M. The weather was "terribly muggy". Because the equipment was not in operation, claimant worked continuously marking the grades. Ordinarily, he would spend only ten to fifteen minutes an hour in that work, often not more than that during an entire day, and the rest of the time he would direct the equipment operators in removing or filling in dirt to the proper grade. Moreover, he usually did not work on wet days. After working several hours in the manner and under the conditions just described, claimant felt a weight on his chest "like a mule had set down" on it, and was unable to continue. He "got in the pickup and slumped over like". Claimant was taken to the office of Dr. Bailey, who sent him to the hospital. An electrocardiogram disclosed that claimant had suffered a muscle spasm of the heart resulting in myo-

cardial damage. Claimant spent two weeks in the hospital, and has since been disabled. The doctor testified that the heart condition was "surely" the result of claimant's exertion under the conditions on the day in question. There was no evidence of any prior heart trouble.

The referee made, inter alia, the following finding of fact: "Seventh: Your Referee therefore finds as a fact that on June 17, 1957 there was a series of natural events, including high temperature, combined with high humidity, and a working area where it was difficult to walk, on a day when claimant was required to continuously climb up and down slopes and cuts, in contrast to the usual duties of grading where he was usually able to take short walks and long rests; and, as a result of these unusual conditions, on June 17, 1957, it was necessary for the claimant to exert unusual effort to perform his duties, which unusual exertion and effort caused him to suffer a coronary insufficiency, or heart attack, which has rendered him totally disabled from June 17, 1957 up to the present time and indefinitely into the future". On appeal, the board vacated this finding, and substituted therefor the following finding of fact: "Seventh: Claimant at the time of the occurrence of his disability on June 17, 1957, was doing only that which was necessary for the performance of his duties in the expected course of events". The court below concluded that "the board's refusal to consider the facts referred to above which differentiated claimant's activity on the morning of June 17, 1957, from his usual duties was arbitrary and inconsistent with the evidence".

The applicable legal principles are well-settled. "Claimant has the burden to prove all of the elements necessary to support an award. We must view the evidence in the light most favorable to the party having the board's decision. Where the board has made

a determination against the party having the burden of proof, the question before the court on appeal is whether the board's findings of fact are consistent with each other and with its conclusions of law, and can be sustained without a capricious disregard of the competent evidence. It was for the board as the final fact finding body to determine from all the evidence whether claimant had sustained the burden resting upon her, and its finding that she had not is a pure finding of fact": *Wehr v. Philadelphia Derrick & Salvage Corp.*, 192 Pa. Superior Ct. 161, 159 A. 2d 924.

While the board is the ultimate arbiter of the facts and its findings are binding on appeal if supported by competent evidence, the appellate court may review questions of law, including whether the law has been properly applied to the facts: *Ede v. Ruhe Motor Corp.*, 184 Pa. Superior Ct. 603, 136 A. 2d 151. If the facts permit of but one legitimate inference, the question becomes one of law: *Rybitski v. Lebowitz*, 175 Pa. Superior Ct. 265, 104 A. 2d 161; *Weiss v. Friedman's Hotel*, 176 Pa. Superior Ct. 98, 106 A. 2d 867; *Giallonardo v. St. Joseph's College*, 177 Pa. Superior Ct. 87, 111 A. 2d 178.

In the case at bar the question for our determination is not whether the evidence would sustain a finding for the claimant, but whether there was a capricious disregard of competent evidence in the board's refusal to so find: *Allen v. Patterson-Emerson-Comstock, Inc.*, 180 Pa. Superior Ct. 286, 119 A. 2d 832. The only testimony in the record is that of claimant and his witnesses. Appellant offered no testimony. We are therefore not presented with a situation wherein the board weighed conflicting evidence. Nor are we concerned with a "capricious disbelief" of testimony. See *Pusey's Estate*, 321 Pa. 248, 184 A. 844. The board simply chose not to find, under what amounted to given facts, that an accident had occurred. We are in accord with

the position of the court below that this was a "capricious disregard" of the evidence. In the words of President Judge MooK: "We have already said that the Board had a right to reject claimant's uncontradicted testimony as untrue, but this is not a case of the Board's rejecting his testimony; here the Board concluded that the claimant's testimony, even if true, did not establish that his work was unusual and that he had sustained an accident".

It would unduly prolong this opinion to attempt a discussion of the many cases involving claims for compensation due to heart attack. A number of them are cited in the briefs, and in the exhaustive opinion below. We collated some of the cases in *Nelson v. Borough of Greenville,* 181 Pa. Superior Ct. 488, 124 A. 2d 675, wherein compensation was allowed. A typical case wherein compensation was disallowed is *Washko v. Ruckno,* 180 Pa. Superior Ct. 606, 121 A. 2d 456. The two cases relied upon by the board are readily distinguishable. In *Shatto v. Bardinet Exports, Inc.,* 170 Pa. Superior Ct. 16, 84 A. 2d 388, claimant alleged a heart attack while shoveling snow, something not unusual in the course of his employment. He had previously suffered a stroke, and had arteriosclerosis. In *Crispin v. Leedom & Worrall Co.,* 341 Pa. 325, 19 A. 2d 400, claimant alleged a heart attack in the normal course of the performance of his duties. The medical testimony disclosed that claimant had a chronic arteriosclerotic condition of the heart. Appellant relies strongly upon *Lorigan v. W. O. Gulbranson, Inc.,* 184 Pa. Superior Ct. 251, 132 A. 2d 695, but in that case also claimant's activity was not unusual, and it was clearly established that he had a heart condition of long standing.

Appellant argues that Dr. Bailey actually indicated that claimant had pre-existing heart disease. Passing the fact that appellant did not raise this question be-

fore the compensation authorities nor in the court below,[1] his contention in this regard is not supported by the record. It is based upon a fragmentary portion of Dr. Bailey's testimony in which he was endeavoring to explain the pathology of the heart attack. The doctor stated that there was something wrong with the circulation. Dr. Bailey obviously meant that, because of claimant's exertion, the heart muscles needed more blood and were not receiving a sufficient supply at the time of the attack. In context, the term "poor circulation" simply described a stage in the heart attack itself and not a pre-existing general condition. All the evidence points to the fact that claimant was previously in good health.

The appeal is dismissed, and the record is remitted to the court below for the entry of a judgment in favor of the claimant. As so entered, the judgment is affirmed. Cf. *Spry v. Polt,* 186 Pa. Superior Ct. 326, 142 A. 2d 484.

---

[1] Questions not raised before the compensation authorities nor in the court below are not entitled to consideration by the appellate court: *Palermo v. N. East Preserving Works, Inc.,* 141 Pa. Superior Ct. 211, 15 A. 2d 44. And see *Richards v. Fraim Lock Co.,* 158 Pa. Superior Ct. 414, 45 A. 2d 382.