Urbasik, Appellant, *v.* Johnstown.

Argued April 9, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Samuel R. DiFrancesco, Sr.*, with him *DiFrancesco & DiFrancesco*, for appellant.

*Edward G. Kuyat, Jr.*, for appellee.

OPINION BY WRIGHT, J., June 13, 1962:

This is a workmen's compensation case. We are here concerned with an appeal by the widow-claimant from an order of the Court of Common Pleas of Cambria County, affirming a decision of the Workmen's Compensation Board, wherein the claim petition was

dismissed. The factual situation appears in the following excerpt from the opinion below:

"Robert Urbasik, the deceased husband of the claimant Olgo Urbasik, was employed as a fireman by the Fire Department of the City of Johnstown, Cambria County, defendant herein. On May 16, 1958, he reported for work at firehall No. 8 on Franklin Street in defendant-city and was scheduled to work from 6:00 P.M. to 6:00 A.M. the following day.

"Decedent's duty as a city fireman was that of driving the fire truck. In such capacity he drove a 1948 'LaFrance' truck which was regularly assigned to firehall No. 8. On May 16, 1958, however, the regular truck was undergoing minor repairs and it had been replaced by a 1930 'Metropolitan' truck. At about 7:00 P.M. an alarm was received and decedent drove the truck to the scene which was slightly over one mile from the firehall. Upon arriving there it was discovered the alarm was false. There was testimony that the route to the situs of the alarm was flat in certain places, but generally up hill with grades of five to eight and one-half per cent.

"It was testified that decedent experienced difficulty in turning the truck for the return trip and at one point known as Whiskey Springs Hill he had considerable difficulty in changing from high to second gear. One of the firemen who accompanied him on the trip stated that he seemed to be in a hurry to get back to the firehall.

"Upon arriving there he complained of difficulty in breathing and pains in his left side. He was immediately taken to the hospital where he was treated by Dr. Herbert V. Allen, Jr., who administered citrocarbonate. The pain subsided in five or ten minutes and he returned to the firehall. The records show the cruiser was called at 7:30 P.M. to transport him to the hospital and he returned to the firehall at 8:45 P.M.

At about 9:30-10:00 P.M. he was perspiring and when asked how he felt, said 'not so good'. At about 10:30 P.M. the claimant called and he informed her that he 'had terrific pain'. At approximately 7:00 A.M. of the following morning, May 17, he was found by a fellow employe, dead or dying in his bed".

The case had its procedural inception on July 9, 1958, with the filing of a claim petition by decedent's widow stating the nature and cause of the accident as follows: "Over-exertion in driving old fire truck causing coronary occlusion". Following the filing of an answer by the employer, the Referee conducted a series of hearings, five in all, and there is a voluminous original record. On January 22, 1960, the Referee made an award based upon findings that the operation of the Metropolitan truck was unaccustomed and unusual exertion, and that decedent had died of "a heart attack . . . precipitated by the over-exertion". Upon appeal by the employer, the Workmen's Compensation Board vacated the Referee's findings on the ground that claimant had not proved that the decedent met with an accident, or that there was a causal connection between decedent's death and his employment. The Board also took the position that the medical testimony fell short of proving that decedent had actually suffered a coronary occlusion. The claim petition was therefore dismissed on the basis of the following substituted finding: "Decedent died on May 17, 1958 from natural causes, precise condition unknown, which was not caused, aggravated or precipitated by the performance of his duties as a fire truck driver for the City of Johnstown". As previously indicated, it is from the lower court's affirmance of the Board's decision that the instant appeal was taken.

The questions before us, as stated by appellant's counsel, are as follows: "1. Whether the evidence was sufficient to establish the occurrence of an accident

within the course of employment? 2. Whether the medical evidence was sufficient to establish a causal connection between the accident and the death of claimant's husband?"

We do not propose to burden this opinion with a detailed analysis of the many cases cited in appellant's brief. One asserted to be "outstanding" is *Skroki v. Crucible Steel Co.*, 292 Pa. 550, 141 A. 480, wherein three medical experts expressed the opinion that death had resulted from an acute dilation of the heart caused by over-exertion. The Board in that case found that the decedent had suffered a compensable accident. In affirming, Mr. Justice WALLING made the following significant statement: "The only question raised is whether that finding is based on any competent evidence. As that must be answered in the affirmative, the appeal fails". This principle has been consistently followed, namely, if the Board decides in favor of the claimant, the question on appeal is whether there is legally competent evidence to support its findings. See *Miller v. Schiffner*, 196 Pa. Superior Ct. 84, 173 A. 2d 707. In the instant case, however, the Board found against the claimant. Where the decision is against the party having the burden of proof, the question then becomes whether the Board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of competent evidence: *Chuplis v. Shalamanda Coal Co.*, 192 Pa. Superior Ct. 76, 159 A. 2d 520; *Dandy v. Glaze*, 197 Pa. Superior Ct. 218, 177 A. 2d 157.

In her effort to prove unusual exertion, appellant introduced testimony that the Metropolitan truck which decedent drove on the evening of May 16, 1958, was more difficult to operate than the LaFrance truck which he customarily drove. Some of this testimony was contradictory, particularly with regard to whether the truck was equipped with two-wheel or four-wheel

brakes. The employer called as a witness a truck repairman with extensive experience in the repair of fire trucks. He testified that, while the brake efficiency of the LaFrance truck would be higher than that of the Metropolitan truck, the mobility and steering would not be materially different. His conclusion was as follows: "Well, in my opinion, I would not consider it a difficult piece of machinery to drive". In the light of the conflicting testimony as to the difficulty in driving the old truck, and the additional exertion purportedly required of the decedent, a pure question of fact was presented to the Board. It is the sole prerogative of the compensation authorities to give the testimony such consideration as it may deserve, and to accept or reject it in whole or in part accordingly: *Carter v. Vecchione,* 183 Pa. Superior Ct. 595, 133 A. 2d 297. We may not on this record disturb the Board's conclusion that the operation of the Metropolitan truck did not require of the decedent "a materially greater amount of exertion, risk or exposure, than that to which he was ordinarily subjected".

Appellant places reliance upon *Foster v. State College Borough,* 124 Pa. Superior Ct. 492, 189 A. 786, and *Nelson v. Borough of Greenville,* 181 Pa. Superior Ct. 488, 124 A. 2d 675, in each of which the death of a fireman was held to be compensable. However, those cases presented markedly different factual situations, and in each instance the compensation authorities found in favor of the claimant. The Board's decision against the claimant in the instant case falls within the general rule that an accident may not be inferred from the fact that disability overtakes an employe in the performance of his usual duties. As we said in *Rettew v. Graybill,* 193 Pa. Superior Ct. 564, 165 A. 2d 424: "Disability overtaking an employe at work is not compensable unless it is the result of an accident . . . An accident may not be inferred merely because an injury.

has been suffered . . . nor may an accident be inferred from the fact that disability overtakes an employe in the performance of his usual duties . . . It is of course true that disability of a normal healthy workman, with no physical weakness other than is common to all men, may be compensable if it is due to an unexpected and unusual pathological result . . . However, the burden is on the claimant to prove that the disability was the result of an accident and not of natural causes . . . While the Workmen's Compensation Act should be liberally construed, its purpose is to compensate for accidental injuries and not to insure the life and health of an employe . . . Where the compensation authorities refuse to find facts in favor of the party having the burden of proof, the question on review is not whether the evidence would sustain such a finding, but whether there was a capricious disregard of competent evidence in the refusal so to find". See also *Bonaduce v. Transcontinental Gas Pipe Line Corp.*, 190 Pa. Superior Ct. 319, 154 A. 2d 298; *Schaefer v. Central News Co.*, 179 Pa. Superior Ct. 559, 118 A. 2d 268.

This appeal cannot be sustained for a second reason. Where there is no obvious causal relationship between the employe's death, and the alleged accident, unequivocal medical testimony is necessary to establish the causal connection: *Washko v. Ruckno*, 180 Pa. Superior Ct. 606, 121 A. 2d 456; *Grentz v. Danny's Restaurant*, 187 Pa. Superior Ct. 625, 145 A. 2d 883. In the instant case appellant refused to consent to an autopsy. The only medical witness who saw decedent before he died was Dr. Herbert V. Allen, Jr. He testified that "the pain didn't appear to me at that time as cardiac pain". The medication he administered was to relieve gas pressure. Dr. H. B. Anderson, in answer to a lengthy hypothetical question, testified: "It would seem to me to be a reasonable certainty that he died of cardiac death . . . precipitated . . . by the unusual

amount of effort". On cross-examination Dr. Allen made the following significant statement: "I will admit that the chain of symptoms are not altogether typical of a case of coronary occlusion, but in the absence of anything better or any better logical basis for the explanation, I still think that his death was on a cardiac basis . . . Q. You are not sure that he died a cardiac death, are you? A. Certainly not". Dr. William L. Hughes, answering the same hypothetical question, expressed the opinion that decedent died a cardiac death precipitated by extreme exertion. However, he conceded that an autopsy should have been performed to establish the cause of death definitely. Dr. H. T. Kahl also testified "that it was a cardiac death . . . from the work of driving the vehicle and leaving the hospital after having had an acute attack". Formerly a fireman himself, Dr. Kahl conceded on cross-examination that it was not difficult to drive a fire truck.

On behalf of the employer, Dr. George W. Katter testified that it was not possible in the instant case to form a definite opinion as to the cause of death, explaining as follows: "There is no clinical information here. There is no history. There is no record of a physical examination. There is no x-ray, or electrocardiagram, or laboratory data. From the lack of all this information any opinion rendered as to the cause of death here, in my opinion, would simply be a guess, and scientifically extremely unsound . . . In summary, therefore, on the basis of this hypothetical question, it is my opinion that no doctor, no matter how well qualified in diagnosis, is able to state definitely that this man died of a coronary death. There are other conditions which are capable of causing sudden death in a similar fashion which we are equally justified in incriminating".

The credibility of the medical experts and the issues created by their testimony were for the compensa-

tion authorities: *Allen v. Patterson-Emerson-Comstock, Inc.*, 186 Pa. Superior Ct. 498, 142 A. 2d 437. Passing the employer's argument that the opinions of appellant's medical witnesses did not meet the required standard of proof, see *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256, it seems abundantly clear that the Board is not chargeable with legal error in refusing to find that claimant had established the necessary causal relationship. We all agree with Judge MacDonald, speaking for the court below, that "there has not been a capricious disregard of competent evidence by the Board". Notwithstanding our sympathy for this appellant, we have no alternative other than to dismiss her appeal.

Order affirmed.