Lingle *v.* Lingle Coal Company, Appellant.

Argued March 16, 1964. Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

466

*William U. Smith,* and *Smith, Smith & Work,* for appellant, submitted a brief.

*Richard A. Bell,* with him *Bell, Silberblatt & Swoope,* for appellee.

OPINION BY WATKINS, J., June 11, 1964:

This is an appeal from the decision of the Court of Common Pleas of Clearfield County, affirming the decision of the Workmen's Compensation Board and awarding thirty per cent disability benefits to the claimant, Donald P. Lingle, since deceased. The appellee is Lena C. Lingle, administratrix of the Estate of Donald P. Lingle, deceased.

The claimant, on June 2, 1961 was employed by the appellant company as a working foreman. On that date he and another workman were loading railroad ties on a truck. This was being done manually, each man lifting the end of a tie. While doing this work the fellow workman allowed his end to fall, throwing the weight of the tie on the claimant and jarring him as the falling tie struck the pile of ties.

The claimant testified that he immediately suffered a sharp pain across his chest over his heart and was forced to stop work for a time. He testified that later, on the same day, he suffered another pain and after consultation with Dr. Thomas Augenbaugh on June 5th was admitted to the hospital on June 9, 1961 where it was found that he had suffered a posterior myocardial infarction. On January 8, 1962, the doctor released the claimant to return to light work. He did not work from the time of the alleged accident. The Board found that he had suffered a compensable injury resulting in total disability from June 5, 1961

to January 8, 1962 and thirty per cent partial disability thereafter.

The testimony of the claimant was to the effect that he suffered an immediate pain across the heart when the tie fell which resulted in his hospitalization. Dr. Augenbaugh testified as follows: "Q. Can you give the date you saw him? A. June 5, 1961 according to my records. Q. What was his complaint at that time? A. Complaining of pain in his chest. Q. This man has been under treatment by you for various things over a period of time? A. Yes. Q. State what various things you treated him for? A. He has been treated for diabetes melitus, by me, since May, 1956 and mild arteriosclerosis. I have several hospital admissions on him as well as my office work. He was a patient in the hospital in May 1956 for diabetes and arteriosclerosis and again in the hospital in 1960 for diabetes and coronary artery disease. The last admission was June 9, 1961. He has posterior myocardial infarction. Q. When you saw him June 5, 1961 were you able to make a diagnosis? A. At that time he had a very slight fever; slight inflamed throat and was placed on penicillin because I suspected he had acute respiratory infection and I was a little suspicious he may have had some infarction. . . . Q. You made a diagnosis while he was in the hospital? A. Yes, posterior myocardial infarction. It is a blocking of the coronary vessel. Q. Blood stoppage in the heart? A. Yes. Q. What happens to the blood vessel when that blood stoppage occurs? A. It blocks off the vessel and the area that muscle supplied undergoes degenerative changes. If large it knocks out a large area and if not too great it makes a good recovery. Q. Does a person suffering from this infarction suffer the pain Mr. Lingle described? A. Yes, chest pain. . . . Q. Mr. Lingle has described a jarring, or strain, or heavy weight thrown on him. Could

this infarction have been caused by sudden strain? A. I don't think I could answer with a yes or no. The thing, it is possible for a sudden strain to precipitate coronaries. It also is recognized they happen at complete rest while patients are sleeping, sitting in a chair, etc. His background was such that he had the build up that this was going to happen. He had diabetes and early arteriosclerosis, which leads on to coronary artery disease and makes it more possible to develop at an early age. He also had symptoms of coronary insufficiency. Pain in the chest. He had these angina pectoris attacks on numerous occasions. It was developing for quite some time. Q. This pain which he described on June 2, 1961 you said came from the infarction? A. No, that could be chest wall pain. Q. Were you able to tell whether he suffered an infarction on that date? A. I can't date it exactly. On the 5th I did not think he had an infarction but was developing during that period. It was a slow process, not sudden. We have cardiogram evidence on that admission he had coronary. Q. A cardiogram does not pin down the exact time? A. No. By The Referee: You mean it could start June 5? A. The cardiogram states he had posterior myocardial infarction which appears recent, which means in a matter of weeks. Q. When asked if the strain could cause it you stated it could be precipitated but could come anyway? A. I don't think anyone could state this happened then. Q. Nor can they state it did not? A. Right. Q. Does the fact he had this second sharp pain indicate he did suffer the infarction at that time? A. No. The sudden strain or jar might have been in the muscle of the chest wall, particularly as they closed up and he went on with his work. Q. You put him in the hospital because he continued suffering pain? A. He had acute respiratory infection in between and began having more frequent and more severe pain in

his chest, which made me suspicious he had developed an occlusion. Q. In any treatment prior to June 1961 he had not suffered a coronary attack? A. He suffered coronary insufficiency. Q. No evidence of stoppage before that? A. No. Other cardiograms were negative."

There seems to be no contention by the appellant that the falling of the tie and its resulting jarring of the claimant did not constitute an accident. The question raised by this appeal is whether there is a causal connection between the accident and the infarction. Where there is no obvious causal relationship between the employee's injury and the alleged accident unequivocal medical testimony is necessary to establish the causal connection. *Urbasik v. Johnstown,* 198 Pa. Superior Ct. 232, 182 A. 2d 90 (1962). It is evident that such unequivocal medical testimony was not present in this case. Neither is the result so immediate and obvious that expert testimony was not required as to causation. *Washko v. Ruckno, Inc.,* 180 Pa. Superior Ct. 606, 121 A. 2d 456 (1956).

Where a previously healthy workman engaged in his usual duties without any untoward event occurring thereby sustains an injury which is an unexpected and unusual pathological result from such effort, his claim is compensable. *Wolford v. Geisel M. & S. Co.,* 262 Pa. 454, 105 A. 831 (1919); *Banks v. Brazee,* 165 Pa. Superior Ct. 268, 67 A. 2d 631 (1949). This has become known as the doctrine of unusual pathological results. In *Adamchick v. Wyoming Val. Col. Co.,* 332 Pa. 401, 3 A. 2d 377 (1939), the doctrine seems to have been swept away by the Supreme Court but there have been frequent applications of the doctrine since that case by both the Supreme and Superior Courts. The confusion that has developed is pointed out in the *Adamchick* case, supra, at page 410, where the Supreme Court say: ". . . the policy which underlies it,

our own decisions and those of the Superior Court, not all of which seem to be in full harmony, . . ."

The cases that have applied the doctrine are collected in a very able article by John M. McLaughlin, Esq., entitled "The Compensability of Heart Injuries Under the Pennsylvania Workmen's Compensation Act". University of Pittsburgh Law Review, Vol. 21, Number 3, March, 1960, page 445. In his article the writer has this to say concerning the application of the doctrine to heart cases: "There can be no doubt that the doctrine of unusual pathological results is firmly engrafted on the body of our Compensation Law. However, there is considerable doubt that the doctrine can appropriately be applied to most heart claims. The reason for this is simple. The doctrine presupposes a healthy claimant. However, most heart claims involve myocardial damage induced by an occlusion of a coronary artery. This in turn is usually caused by pre-existing arterio-sclerosis of the coronary vessels. The occlusion can be caused by a gradual narrowing of the lumen until a. natural climax is reached by a spasm or a clot suddenly forming at the site of arterial damage. Notwithstanding several appellate decisions applying the doctrine to heart cases the medical basis for such application is dubious."

. We are not here faced with the complex problems created by this theory; nor are we faced with the problem where the employee has. a pre-existing disability and there was no conventional accident or unusal exertion. *Smith v. Pittsburgh Coal Co.,* 71 Pa. Superior Ct. 325 (1919). In the instant case there was clear evidence of pre-existing heart disease and diabetes for which the testifying doctor treated this claimant but there was also the admitted accident of the falling tie. However, the problem before this Court is whether there is evidence that the accident caused the claimant's myocardial infarction or so aggravated an exist-

ing cardiac insufficiency so that the infarction resulted. There most certainly, under these facts, is no obvious causal connection between the infarction and the falling tie that would not require proof of causation.

The claimant in this case has the burden of proving all the elements necessary to support the award. *Witters v. Harrisburg Steel Corp.*, 183 Pa. Superior Ct. 450, 132 A. 2d 762 (1957). The evidence must be viewed in the light most favorable to the claimant who has the Board's decision. *Curran v. Knipe & Sons, Inc.*, 185 Pa. Superior Ct. 540, 138 A. 2d 251 (1958); and the question before this Court is whether the Board's findings are consistent with each other and with its conclusions of law and can be sustained without a capricious disregard of the competent evidence. *Rodgers v. Methodist Episcopal Hosp.*, 188 Pa. Superior Ct. 16, 145 A. 2d 893 (1958).

As to the burden of proof, this is well put in the words of President Judge RHODES in *Mancuso v. Mancuso*, 150 Pa. Superior Ct. 22, 24, 27 A. 2d 779 (1942), as follows: "Claimant's disability is not compensable unless the result of an accident in the course of his employment. . . . The burden was on claimant to show by competent evidence that his disability was accidental and not from natural causes or from the normal progress of his condition. . .".

In *Grentz v. Danny's Restaurant*, 187 Pa. Superior Ct. 625, 145 A. 2d 883 (1958), the claimant who had a pre-existing coronary sclerosis and on the day of the alleged accident was exposed to excessive heat which together resulted in a coronary occlusion and heat exhaustion was awarded compensation. On appeal to the court below, the decision was reversed and judgment entered for the defendant on the ground that the testimony viewed in the light most favorable to the claimant was insufficient, as a matter of law, to prove

that heat exhaustion either caused or was a contributing cause of the death. This Court affirmed.

In the *Grentz* case, supra, the medical testimony went no further than to indicate that death might have or could have or possibly did come from heat exhaustion or that it might have or could have contributed to the result. In *Smith v. Pull.-Stand. Car Mfg. Co.*, 194 Pa. Superior Ct. 263, 166 A. 2d 299 (1960), the testimony of causation was to the effect that the connection was very probable and highly possible but this Court held that unequivocal medical testimony was necessary and in *Ferlazzo v. Harbison-Walker R. Co.*, 200 Pa. Superior Ct. 390, 189 A. 2d 189 (1963), we held that the word "presume" used by the doctor was no stronger than the word "assume" in the *Smith* case, supra, and not the unequivocal testimony required. The professional opinion must be that the result in question came from the accident.

*Witt v. Witt's Food Mkt.*, 122 Pa. Superior Ct. 557, 186 A. 275 (1936), upon which the appellee and the court below rely so heavily was a heart case but the claimant "was apparently healthy before the accident . . . he had experienced no cardiac trouble. Manifestations of an injury were immediately apparent after the claimant lifted the quarter of beef." The Court commented that the results were immediate and obvious and that in such circumstances expert testimony was not required on the issue of causation.

The trouble with the instant case is that this claimant was not a healthy man before the accident. As testified to by Dr. Augenbaugh, "He had diabetes and early arteriosclerosis, which leads on to coronary artery disease . . . He also had symptoms of coronary insufficiency. Pain in the chest. He had these angina pectoris attacks on numerous occasions. It was developing for quite some time." The doctor's testimony concerning the cause of the condition was much weaker

than in the cases cited above in that he stated that he couldn't answer "Yes" or "No" that the condition was caused by the accident because under the claimant's health conditions it could have happened under complete rest. With this kind of a record it was absolutely essential to have unequivocal medical testimony of causation because it is clear that it might have been caused by the shock of the falling tie or by the ordinary progress of the disease. The infarction in the case at bar was not so immediately and directly, or naturally and probably, the result of the falling tie, so as to obviate the necessity for unequivocal medical testimony establishing a causal connection. *Washko v. Ruckno, Inc.,* supra.

There being no unequivocal testimony of an injury resulting from an accident in this record, a review of this testimony in the light most favorable to the claimant discloses that the findings of the Board, as affirmed by the court below, were not supported by legally competent evidence. This is a question wholly of law and properly before this Court. While the Board is the ultimate arbiter of the facts and its findings are binding on appeal, if supported by competent evidence, the appellate court may review questions of law including whether the law has been properly applied to the facts. *Adams v. Dunn,* 192 Pa. Superior Ct. 319, 162 A. 2d 42 (1960) ; *Monahan v. Seeds & Durham,* 336 Pa. 67, 6 A. 2d 889 (1939).

Decision of the court below is reversed and judgment is directed to be entered for the defendant.